Filed March 11, 1885.

———————◆———————

No. 11,770.

BOND v. EVANSVILLE AND TERRE HAUTE RAILROAD COMPANY.

RAILROAD.—*Fences.*—If proper fences are built and maintained, it will make no difference, in an action by an adjoining land-owner for stock killed, whether such fences are built and maintained by the railroad company or such adjoining land-owner, or whether they are upon the right of way, or upon the lands of such owner, with his consent.

SAME.—*Agreement by Land-Owner to Fence.—Animals.*—Where an adjoining land-owner expressly or impliedly agrees to build and maintain fences between his lands and the railroad, as to him the track will be regarded as fenced, and he can not recover from the company for the loss of animals which, for the want of such fence, pass to the track and are injured or killed.

SAME.—*Farm Crossings.*—*Gates.*—*Negligence.*—Where gates are allowed at farm crossings for the convenience of an adjoining land-owner, he is bound to keep them closed, and if he fails to do so, and his animals pass through them to the railroad and are injured or killed, he can not recover from the company on the ground that it has neglected to fence its track as required by the statute.

SAME.—*Cattle-Pits.*—In such case, and as to such land-owner, the company is not bound to maintain cattle-pits at such crossing.

From the Knox Circuit Court.

*G. G. Reily* and *W. C. Niblack,* for appellant.

*F. W. Viehe* and *M. J. Niblack,* for appellee.

ZOLLARS, C. J.—Upon each side of, and upon the line of its right of way, which extends north and south through appellant's farm, the appellee has maintained fences, except a space in front of appellant's house on the east side of the track. In front of the house is a piece of ground seventy-five feet square, outside of the right of way proper, on all sides of which, except that on the line of appellee's right of way, there are and have been secure fences. Appellant has owned the farm for seventeen years. He built and has maintained the fences around the above named piece of ground since he has owned the farm. He got the farm from his father. Whether or not this piece of ground was fenced in the manner it now is while the father owned the farm, is not certain from the evidence. In the fence on the west side of the track, and in the fence surrounding the above named piece of ground, appellant has maintained gates. Through these gates, and over a crossing, prepared by appellee, he passes, and has passed from one side of his farm to the other, and in reaching a highway leading to Vincennes and other places. These, or similar gates, and the crossing, were used by the father. In short, that crossing has been there since the railroad was constructed many years ago. Whether the father had contracted with the company to maintain the fence around the square piece of ground, is not shown. Appellant has maintained those fences and the gates, as he states, without any express

Bond *v.* Evansville and Terre Haute Railroad Company.

contract with the company. It seems that appellant has allowed some of his neighbors to use these gates and the crossing, in reaching the highway, and in going to Vincennes and other places. Whether or not the company knew of such use by the neighbors, is not shown by the evidence. There are neither cattle-pits at, nor wing fences from, the crossing at the track. Appellant's mule colt and hogs, for the loss of which this action is prosecuted, were killed south of this crossing by one of appellee's trains. No question is made as to the sufficiency of the fences proper.

It is not shown how the hogs got upon the right of way, neither is there anything but conjecture as to how the colt got upon the right of way, as there is no evidence that the gates were left open by any one at or near the time of the killing. The case, however, is submitted upon the theory that some one left the gate open, which is in the fence around the square piece of ground, and that the colt passed through it, and thence to the railroad. The contention of appellant is that the square piece of ground was not fenced by the company, and that it did not maintain cattle-pits at the crossing, and hence is liable for the value of the animals killed, under the statute which requires railroad companies to fence their tracks. The court below held against him. He has appealed, and asks a reversal of the judgment upon the evidence. The question is, Was the railroad so securely fenced by the railroad company as to defeat appellant's action? It makes no difference whether the fences are built upon the company's own ground, or over upon the land of an adjoining proprietor; if there by his consent, the road would still be fenced. If, then, by the consent of appellant, the company had built fences around the square piece of ground in front of his house, as they were built by him, the railroad would have been fenced just as effectually as if built upon the line dividing appellant's land and the right of way. The fact that the fences were thus built, with the other circumstances, shows that this

piece of ground was, for the time being, abandoned as farm-ing land, and thrown into the right of way.   Nor can it be said that the railroad was not fenced at this point because the fences were built around the square piece of land by appel-lant, and not by the company.   It is not material who builds and maintains the fences, so they are built and main-tained. *New Albany, etc., R. R. Co.* v. *Pace,* 13 Ind. 411.   It has long been held by this court that where a person through whose land a railroad is constructed agrees to build and main-tain fences along the right of way, the road will be regarded as fenced as to him, and that if he fails to build and main-tain such fences, and his animals pass to the track and are killed, he can not recover from the company on the ground that it has not fenced its track as required by the statute. *Terre Haute, etc., R. R. Co.* v. *Smith,* 16 Ind. 102.

This exoneration from liability under such circumstances was at one time extended to all persons.   It has, in later cases, been confined to the parties agreeing to keep up the fences.   As to them it has never been questioned, but many times approved and reaffirmed. *Bellefontaine R. W. Co.* v. *Suman,* 29 Ind. 40; *Indianapolis, etc., R. R. Co.* v. *Petty,* 25 Ind. 413; *Fort Wayne, etc., R. R. Co.* v. *Mussetter,* 48 Ind. 286; *Cincinnati, etc., R. R. Co.* v. *Ridge,* 54 Ind. 39; *Indi-anapolis, etc., R. W. Co.* v. *Thomas,* 84 Ind. 194; *Louisville, etc., R. W. Co.* v. *Skelton,* 94 Ind. 222.

There is no good reason why this agreement to keep up fences may not be an implied agreement, so as to defeat an action against the company under the statute in relation to fencing.   It was held in the case of *The Indianapolis, etc., R. R. Co.* v. *Shimer,* 17 Ind. 295, as stated in the sylla-bus, that " Where a railroad company has securely fenced its road, except at certain places where the owner of the land is permitted to erect draw-bars or gates for his own conve-nience in crossing said road, and by reason of the neglect of such land-owner to maintain such bars or gates, his stock

Bond *v.* Evansville and Terre Haute Railroad Company.

passes upon the railroad track and is killed, the company is not liable for the damages sustained." This case, like the others above cited, does not extend the rule beyond the immediate party for whose benefit the privilege of gates, etc., is granted. It does not apply to third parties, and, like the other cases, this has been many times cited with approval in subsequent cases. The doctrine of this case, we think, is a reasonable one, and should be applied in the case before us. As we have said, there is no controversy about the sufficiency of the fences around the square piece of land. It is not necessary, therefore, for us to decide or indicate anything as to what might be the rule, and the liability of appellee, should that fence be allowed to become insecure, and by reason thereof animals should escape and be injured or killed. For aught that appears here, the railroad company might have forbidden the gates maintained and used by appellant. They have been allowed for his accommodation. He has erected and maintained them for his own accommodation. The privilege is doubtless a valuable one to him. If he has so used them, or allowed them to be so used, that they have been left open, so that his animals have escaped through them, it has been his own fault, for which he should not hold the railroad company liable. When these gates are shut, the railroad is securely fenced. An adjoining land-owner can not tear down fences built by the company, nor leave gates open which he has been allowed to maintain for his own convenience, and then hold the company liable for not having erected fences and cattle-pits at the crossing to protect him against his own wrong or negligence. If he commits the wrong or abuses the privilege, he must take the risk and consequences. And besides, the most that could be accomplished by using fences and cattle-pits would be to confine the crossing to a narrower space, because cattle-pits could not be erected to keep animals from the track without destroying the crossing; and besides, further,

if a crossing of any kind is provided, animals might as readily be injured upon it as elsewhere.

We think that the judgment of the court below is right upon the evidence, and it is therefore affirmed with costs.

