Filed Jan. 23, 1886.

---

No. 12,344.

## WELTY v. THE INDIANAPOLIS AND VINCENNES RAILROAD COMPANY.

RAILROAD.—*Statutory Action.*—*Contributory Negligence.*—Contributory negligence is not a defence to an action based upon the statute imposing upon railroad companies the duty of fencing their tracks.

SAME.—*Cattle-Guards.*—The failure to construct cattle-guards, where it is the duty of the railroad company to construct them, is regarded as a failure to fence.

SAME.—*Abandonment of Animal by Owner.*—An owner who abandons his animal can not recover, although it enters upon the track of a railroad, and is killed, at a place where the company has failed to perform its statutory duty by fencing its track.

SAME.—Where the borrower of a horse, while intoxicated, rides the animal along a highway to a railroad crossing, and, there being no fence or cattle-guard as required by statute, the horse turns and proceeds upon the track until killed by an approaching train, the railroad company is not liable to the owner in an action based upon the statute requiring such companies to keep their tracks securely fenced.

DRUNKENNESS.—*Not Available to Avert Consequence of Act.*—Voluntary drunkenness is not available to avert the usual and natural consequence flowing from a man's act, and a drunken man will be held to the same measure of responsibility as a sober one, and his actions judged by the same standard, except in case of contracts.

Welty *v.* The Indianapolis and Vincennes Railroad Company.

From the Morgan Circuit Court.

*W. R. Harrison* and *W. E. McCord,* for appellant.

*S. O. Pickens,* for appellee.

ELLIOTT, J.—The appellant was the owner of a mare of the value of $150 on the 30th day of September, 1882, and on that day lent her to Thomas King to ride to Martinsville. King became intoxicated while at that place, and was in that condition upon his way from that town to the appellant's house. The mare, with King as her rider, travelled along the public highway leading to the house of the appellant, but when she came to the place where the highway crossed the track of the appellee's railroad, left the highway and travelled along the railroad for about eight hundred feet. An approaching train frightened her, causing her to run into a trestle work where the train ran upon her and killed her. There were no fences or cattle-guards at the highway crossing, and nothing to prevent the mare from entering upon the railroad track. Upon a special verdict, setting forth these facts, the trial court gave judgment in favor of the appellee.

The appellant founds his cause of action entirely upon the statute requiring railroad companies to securely fence their tracks, and unless the facts stated in the special verdict make a case within the statute, he can not recover, for a plaintiff must recover upon the theory on which his complaint is framed or not at all. *Leeds* v. *City of Richmond,* 102 Ind. 372; *City of Logansport* v. *Uhl,* 99 Ind. 531 (50 Am. R. 109); *Sims* v. *Smith,* 99 Ind. 469, see p. 477 (50 Am. R. 99); *Western Union Tel. Co.* v. *Reed,* 96 Ind. 195; *Western Union Tel. Co.* v. *Young,* 93 Ind. 118; *Mescall* v. *Tully,* 91 Ind. 96, and cases cited.

Contributory negligence is not a defence to an action based upon the statute imposing on railroad companies the duty of fencing their tracks. The disregard of this duty is not simply negligence on the part of a railroad company, but it is a tort, for it involves the direct violation of a positive and ex-

plicit law. So the statute treats the disregard of duty, and so our decisions have uniformly declared. *Jeffersonville, etc., R. R. Co.* v. *Ross*, 37 Ind. 545, see p. 549; *Louisville, etc., R. W. Co.* v. *Cahill*, 63 Ind. 340; *Louisville, etc., R. R. Co.* v. *Whitesell*, 68 Ind. 297. A very forcible assertion of this doctrine is contained in the opinion of Judge COOLEY, in *Flint, etc., R. W. Co.* v. *Lull*, 28 Mich. 510. This rule, of course, only applies to cases where the railroad company is bound to fence, for, if the animals killed entered upon the track at a place where the railroad company was not bound to fence, then the contributory negligence of the owner will prevent a recovery. *Cincinnati, etc., R. W. Co.* v. *Hiltzhauer*, 99 Ind. 486. The rule declared in the case last cited, that if stock are killed at a point where the railroad company was not bound to fence a recovery will be defeated by contributory negligence, does not apply here, for the place where the mare entered upon the track was one which the appellee was bound to protect by cattle-guards, and the failure to construct suitable guards where it is the duty of the railroad company to construct them, is regarded as a failure to fence. *Fort Wayne, etc., R. R. Co.* v. *Herbold*, 99 Ind. 91. What we have said shows that the element of contributory negligence exerts no influence upon the decision of this case, and that our judgment must be given irrespective of that element.

An owner who abandons his animal can not recover, although it entered upon the track of a railroad, and was killed, at a place where the company failed to perform its statutory duty by fencing its track. *Knight* v. *Toledo, etc., R. W. Co.*, 24 Ind. 402; *Jeffersonville, etc., R. R. Co.* v. *Dunlap*, 29 Ind. 426; *Corwin* v. *New York, etc., R. R. Co.*, 13 N. Y. 42, see opinion, DENIO, J., p. 54.

Sound principle supports this rule. If an owner were permitted to voluntarily put his domestic animals in a situation where it was almost certain that they would be killed by passing trains, and yet, in the event that they were killed, recover from the railroad company, it would open the way to

great frauds, since it would enable the owner to recover for property voluntarily exposed to destruction; but this would not be the only evil result, for a further evil consequence would be that the temptation to get rid of animals not needed or not useful at the expense of the railroad company would endanger the safety of those who travel upon our railroads. Public policy requires that a man who voluntarily puts his property in a place where it is certain that it will be destroyed shall not receive assistance from the courts. A man who willingly abandons his property to destruction, or purposely exposes it to a known danger, has no right, either in law or morals, to invoke the assistance of the courts of justice to secure pay for it. But, in order to deprive the owner of his rights under the statute, there must be something more than mere contributory negligence; there must be a voluntary abandonment of his property or an intentional exposure of it to danger. This intention, to be sure, need not be expressed in direct words or acts; it may be inferred from circumstances, but it must nevertheless exist. When it does appear that it exists, then, under the maxim *volenti non fit injuria*, there can be no recovery. If a man consents to the destruction of his property he can not recover its value.

If an owner rides his horse upon a railroad track, he must, under the reasoning of the cases to which we have referred, be deemed to have voluntarily exposed it to destruction. Such an act implies an assent to its destruction and indicates an abandonment of it. The omission of the railroad company to do what the law enjoins does not authorize an owner of property to place it on the track, for the Legislature can not be presumed to have intended that one who abandons his property shall nevertheless recover its value. To us it seems clear, that if the appellant had ridden the mare upon the defendant's track, he would not have the slightest grounds upon which to base his claim for the value of his property. Such an act is something more than mere negligence; it is a wilful trespass upon the property of another, exposing the trespasser

to imminent danger. He who voluntarily puts his property in such a dangerous position assents to its destruction, for the maxim is, that a man is presumed to intend the natural consequences of his act. The act of riding upon a railroad track is not defensible upon any ground save that of necessity, and he who does such a wrongful act without the warrant of necessity must abide the consequences. The case we have stated furnishes far stronger evidence of an abandonment of property than that of *Knight* v. *Toledo, etc., R. W. Co., supra,* and yet it was there said: "Under such circumstances, we do not think the party injured can be heard to complain in a court of justice; it would be a violation of one of the maxims of the law."

In *Jeffersonville, etc., R. R. Co.* v. *Dunlap, supra,* it was said : "So, very clearly, if the owner drives his animal upon the track, that it may be killed, or allows it to wander under such circumstances as justify the conclusion that he desires that result, it can not be supposed that the Legislature intended that the railroad company should be liable, on account of its failure to fence."

We assume on the strength of these authorities, and the principles which we have stated, that, if the appellant had himself ridden the mare upon the track, he could not recover.

The borrower of the mare stood to the railroad company as the owner, for the latter had placed it in the borrower's possession and control. We suppose it to be too clear for debate, that if the borrower had, while sober, purposely and deliberately ridden the mare upon the track in front of an approaching train, the company would not be liable. It would shock every just mind to affirm that a railroad company must pay for property placed in certain danger of destruction by the man to whom the owner had entrusted it. If the act of the person placed in possession of the property would, in the case supposed, relieve the company from liability, it must have that effect in all cases where the injury to the property is due to the wrongful act of the person in possession in voluntarily

exposing it to danger. Whether the person in possession of a horse rides in front of an approaching train or rides upon the track where there is no means of escaping from trains, he must, in either case, be deemed to have voluntarily exposed the property to danger, and, in contemplation of law, to have consented to its destruction, for he is presumed to intend the natural consequences of his acts. We assume, then, that the appellant has no cause of action if the act of King can be regarded as such a reckless and intentional exposure of the mare to danger as constituted an abandonment of the property or implies consent to its destruction.

King's act in riding upon the track must be deemed to imply consent to the destruction of the mare, unless the fact that he was intoxicated is a sufficient cause for holding that the presumption that he did not intend the natural consequences of his act can not prevail against him. It is clear upon principle and authority that it can not have that effect. Drunkenness is no excuse for crime, and if it can not be used as an excuse by one accused of crime it is not conceivable that it can be used where only property rights are involved to avert consequences which usually result from a wrongful or negligent act. *Goodwin* v. *State*, 96 Ind. 550, and cases cited. In *Bloom* v. *Franklin Life Ins. Co.*, 97 Ind. 478 (49 Am. R. 469), it was held that the representative of a man who met his death while committing an assault and battery, could not urge as a cause for averting a forfeiture of a policy of life insurance that the insured was drunk at the time he committed the unlawful act. Judge COOLEY says: "The fact that a tort was committed while a defendant was intoxicated is no excuse whatever." Cooley Torts, 114. In another treatise it is said: "Intoxication should not benefit any man." Shear. & Redf. Neg., section 29, n.

The adjudged cases agree that intoxication will not excuse a man from the exercise of the care and diligence required of all citizens. *Yarnall* v. *St. Louis, etc., R. W. Co.*, 75 Mo.

Welty *v.* The Indianapolis and Vincennes Railroad Company.

575; *Fitzgerald* v. *Weston,* 52 Wis. 354; *Denman* v. *St. Paul, etc., R. R. Co.,* 26 Minn. 357; Beach Cont. Neg. 205; Thompson Neg. 430. The principle deducible from these authorities is, that voluntary drunkenness is not available to avert the usual and natural consequences flowing from a man's act, and from this deduction flows the ultimate conclusion that a drunken man will be held to the same measure of responsibility as a sober one, and his actions judged by the same standard, except in cases of contract. As this is the rule, the act of King in riding the appellant's mare upon the railroad track must be treated as if it had been done by a sober man, and, thus treated, it is evident that there can be no recovery by the appellant. This result is just in itself and required by the highest considerations of public policy. If it were otherwise, then a drunken man might purposely ride his horse upon a railroad track in front of a locomotive and secure a recovery by pleading his own wrong in voluntarily making himself drunk. Such a result no principle of right or justice would tolerate. If King had been sober, there could be no doubt that the appellant could not recover, and as King's drunkenness can not be permitted to change the nature of his act, it conclusively follows that his drunkenness will not avail to change the results that flow from that act. The same rule applies to him drunk as to him sober. If it were otherwise, a premium would be put on drunkenness, and that the law has never yet done, and, it is not hazardous to affirm, never will do.

Judgment affirmed.

Filed Jan. 21, 1886.