The Fort Wayne, Cincinnati and Louisville Railroad Co. *v.* Woodward.

Filed Oct. 18, 1887.

No. 12,902.

THE FORT WAYNE, CINCINNATI AND LOUISVILLE RAILROAD COMPANY *v.* WOODWARD.

RAILROAD.—*Right of Way.*—*Liability for Killing Animals Turned into.*—*Fence.*—*Private Gate.*—Where one habitually turns his horses into the right of way of a railroad company, through a gate maintained for his accommodation, in order that they may reach a pasture field adjoining the right of way, between which and the latter there is no fence, he can not recover their value if killed.

From the Allen Circuit Court.

*W. H. Coombs, R. C. Bell* and *S. L. Morris,* for appellant.
*W. G. Colerick,* for appellee.

MITCHELL, J.—Conceding that the complaint stated facts sufficient to constitute a cause of action, we have concluded,

after an attentive consideration of the evidence in the record, that the judgment of the circuit court is not sustained by the proof.

The case made is, briefly, as follows : The plaintiff was in the habit of pasturing his horses on a narrow strip or tract containing about four acres of land, lying lengthwise along the appellant railway company's right of way, in Wells county. This strip of ground was securely fenced all round, except that there was no fence between it and the company's right of way. In order to gain access to the pasture a gate had been erected, and was being maintained with the company's permission, through a fence erected by the company along a public highway over which its right of way had been laid.

It had been the plaintiff's habit to turn his horses from the highway through the gate thus maintained, and to allow them to pass thence along and over the company's right of way some ten or twelve rods, until they reached a point where they could pass from the right of way on to the pasture lot, which lay in common with the right of way.

It is to be inferred that the gate was erected and maintained by and for the benefit of the owner of the pasture lot. It was the plaintiff's custom to observe when the last train, as he supposed, passed over the railroad in the evening, after which he would turn his horses through the gate, and allow them to go to the pasture in the manner above described. His habit was to take them out of the pasture over the right of way and through the gate in the morning, in advance of the passage of the first train. On the evening of August 23, 1885, the appellant turned two horses owned by him through the gate on to the company's right of way. He watched them until they passed over and from the right of way into the pasture field. At some time during the night the animals wandered back upon the right of way, and in the morning one was found dead and the other severely

injured, from contact with a passing train on the appellant's track.

Upon the foregoing undisputed facts, was the company liable to the appellant for not having fenced its track in compliance with the act approved April 13th, 1885?

That it was the duty of the company to maintain a sufficient fence between its right of way and the appellee's pasture field, is plain, and that it was in default in not maintaining a fence as required by the statute, may be conceded. It may be conceded, too, as a general proposition, that an adjacent land-owner can not be deprived of the proper use of his land by the default of a railroad company in neglecting to fence its track. The land-owner may now, after having given thirty days' notice to the company in default, erect fences at the company's expense at all places where the statute requires railroads to maintain fences. It may be, too, although we decide nothing upon that subject now, that if a land-owner uses his enclosed lands in the ordinary way, and his animals escape on to the track of a railway company, which is not fenced as the statute requires, the knowledge of the land-owner that the track was not fenced will not defeat his statutory right of recovery. It has been held that contributory negligence is no defence in such a case. *Louisville, etc., R. W. Co.* v. *Cahill*, 63 Ind. 340; *Welty* v. *Indianapolis, etc., R. R. Co.*, 105 Ind. 55.

To habitually turn animals loose upon a railroad track or right of way is, however, something more than contributory negligence. Such conduct evinces a disposition to abandon the animals to the hazard of certain and inevitable destruction sooner or later.

"A man who willingly abandons his property to destruction, or purposely exposes it to a known danger, has no right, either in law or morals, to invoke the assistance of the courts of justice to secure pay for it." *Welty* v. *Indianapolis, etc., R. R. Co.*, *supra*.

The plaintiff must have known, when he allowed his horses to go over the appellant's right of way to the pasture field, that the instinct of the animals would naturally lead them to come back from the pasture on to the right of way and up to the gate through which they customarily gained access to and egress from the field. In respect to the owner who thus treats his animals, if the railroad track is securely fenced at the point where he voluntarily turns them loose upon the right of way, he may not complain. Having chosen the company's right of way as a convenient way for his horses to go to and from the field, he is in no position to claim compensation for injuries to which he voluntarily exposed them.

In the recent case of *Louisville, etc., R. W. Co.* v. *Goodbar,* 102 Ind. 596, this court said: "It would be unjust to compel a railroad company to pay for animals that entered upon its track through a gate maintained by the owner for his own accommodation." *Bond* v. *Evansville, etc., R. R. Co.,* 100 Ind. 301.

For a much greater reason would it be unjust to compel a railroad company to pay for animals which the owner voluntarily and habitually turned into its right of way, through a gate maintained for his accommodation.

The judgment is reversed, with costs.

