(November 10, 1896.)

## McDONALD v. GREAT NORTHERN RAILWAY CO.
### [46 Pac. 766.]

DAMAGES FOR HORSES KILLED BY RAILROAD TRAIN—CONTRIBUTORY NEGLIGENCE.—Where plaintiffs, without the knowledge or consent of defendant, entered upon its right of way, for the purpose of cutting and hauling ties and timber from the adjoining lands, and, while so engaged, turned their horses loose upon such right of way, for the purpose of grazing and water, leaving a man to watch and care for said horses, and keep them from straying upon the railroad track of defendant (said right of way being about two hundred feet in width), and such attendant having abandoned the care of said horses, they strayed upon the tracks of defendant, and were killed by a passing train, without fault, or want of ordinary care by the employees of defendant, held, that plaintiffs were guilty of contributory negligence, and were not entitled to recover from defendant for the loss of such animals.
(Syllabus by the court.)

APPEAL from District Court, Kootenai County.

Jay H. Adams and R. E. McFarland, for Appellant.

This is an appeal by the Great Northern Railway Company from the judgment of the court below, rendered in an action sounding in tort for the negligent killing of five head of horses, the property of the respondents, by a locomotive and train of freight cars owned and operated. by the appellant. The respondents negligently and carelessly turned their horses out on the right of way and railway track of the appellant, and left them unguarded and unattended, and such horses were killed by the contributory fault and negligence of the respondents, their servants and agents. The motion of the defendant for a nonsuit ought to have been granted. The complaint counted on the negligent management of the freight train which run against and killed the plaintiff's horses. There was an utter absence of any proof on the part of the plaintiffs tending to establish any negligence whatever. The plaintiffs' testimony shows only that the horses got on the track and were killed. No inference of negligence can be indulged from these facts alone. (*Sorenson v. Menasha Paper & Pulp Co.,* 56 Wis. 338, 14 N. W. 446; *Payne v. Forty-second Street etc. R. R. Co.,* 40 N. Y. Super. Ct. Rep. 8; *Eddy v. La Fayette,* 49 Fed. 798; *Sherman v. Menominee River Lumber Co.,* 77 Wis. 14, 45 N. W. 1079.) That about half an hour before the horses were killed by the moving train of the appellant, Anderson turned the horses loose upon the right of way to feed and water thereon, and after watching them for about twenty minutes went off and left unguarded and unattended and in a position of great danger from moving trains. That he apprehended the danger is conclusively evident from the testimony given by him, and that when he heard the train strike the bridge he rushed to the door of the cabin and looked out, having in mind the fear that the horses which he had left on the right of way had been caught by the train. That such conduct on the part of the agent of the plaintiffs constitutes contributory negligence, which would bar a recovery, seems to be well established by the authorities. (*Carey v. Chicago etc. Ry. Co.,* 61 Wis. 71, 20 N. W. 648; *Fort Wayne etc. Co. v. Woodward,* 112 Ind. 118, 13 N. E. 260; *Peterson v. Northern Pac. R. R. Co.,* 86 Wis. 206, 56 N. W. 639; *Hager v. Southern Pac. Co.,* 98 Cal. 309, 33 Pac. 119;

*Chicago etc. Ry. Co. v. Totten,* 1 Kan. App. 558, 42 Pac. 269; *Schneekleth v. Chicago etc. Ry. Co.,* 108 Mich. 1, 65 N. W. 663.)

Charles L. Heitman, for Respondents.

The main contention of appellant is that respondents were guilty of contributory negligence in permitting the said horses to go upon appellant's right of way, unguarded and unattended. The common-law rule that every man is bound to keep his stock on his own land at his peril, and, if he fails to do so, is liable for their trespasses upon the lands of others, whether fenced or unfenced, is not recognized as being in force in Idaho, and in many of the states, owing to the condition of the country. (See note to *Tonawanda R. R. Co. v. Munger,* 49 Am. Dec. 249, in which many cases are collated and commented upon.) Horses and cattle are free commoners in Idaho. (*Waters v. Moss,* 12 Cal. 535, 73 Am. Dec. 561; *Richmond v. Railroad Co.,* 18 Cal. 351; *McCoy v. Railroad Co.,* 40 Cal. 532, 6 Am. Rep. 623; *Needham v. Railroad Co.,* 37 Cal. 409.) Where cattle are free commoners, turning them out, though near to a railroad and near to car time, is not necessarily an act of negligence on the part of the owner, nor are they trespassers by going onto the track of a railroad. (2 Rorer on Railroads, 1382; *Macon etc. R. Co. v. Lester,* 30 Ga. 911; *Timm v. R. R.,* 3 Wash. 299, 13 Pac. 415; *Moses v. R. R.,* 18 Or. 385, 23 Pac. 499, citing many cases; *McMasters v. R. R.,* 12 Mont. 163, 30 Pac. 269; *Prickett v. R. R.,* 33 Kan. 748, 7 Pac. 611; *Macon etc. R. Co. v. Barber,* 42 Ga. 300.) The rule that the plaintiff cannot recover damages if his own wrong, as well as that of the defendant, conduced to the injury, is confined to cases where the plaintiff's wrong or negligence has immediately, or proximately, contributed to the result. (*Kline v. Central Pacific R. R.,* 37 Cal. 400, 99 Am. Dec. 282; *Needham v. San Francisco etc. R. R.,* 37 Cal. 409; *Flynn v. San Francisco & S. J. R. R.,* 40 Cal. 18, 6 Am. Rep. 595, and note; *Meeks v. Southern Pacific R. R.,* 56 Cal. 520, 38 Am. Rep. 67, and note.) In order to preclude a recovery it must appear that the plaintiff's negligence was the proximate

cause of the loss, and the mere fact that the cattle were allowed to be at large is not enough. (*Railroad Co. v. Williams,* 65 Ala. 74; *Isbell v. Railroad,* 27 Conn. 393, 71 Am. Dec. 78; *Kerwhacher v. Railroad,* 3 Ohio St. 172, 62 Am. Dec. 246; *Railroad Co. v. Elliott,* 4 Ohio St. 474; *Railroad Co. v. Irish,* 72 Ill. 404; *Ewing v. Railroad,* 72 Ill. 75.)

HUSTON, J.—The record in this case develops but little conflict in the evidence. The facts are substantially as follows: The plaintiff, by her agents and employees, was engaged in cutting ties and other timber upon the land adjoining the right of way of defendant, which, at the point where the accident which is the basis of this action occurred, was through land heavily timbered upon both sides of the right of way. The land was cleared upon both sides of the track the width of the right of way, and, where the timber had been cleared off, there was a growth of grass and willows. A small stream crossed the track, which stream was bridged. The plaintiff, by her agents and employees, was, as before stated, engaged in the cutting and hauling of ties and other timber from the lands adjoining the right of way of defendant, and, in the pursuance of this business, had erected a cabin, or "shack," as it is termed in the evidence, for their accommodation and convenience, upon the right of way of defendant, and near the track of its railway. It does not appear that such occupancy was by or with the knowledge or consent of defendant. It was taken by plaintiff on account of the convenience of feed and water for stock, to wit, the horses plaintiff was using in the business in which she was engaged, the grass and water upon the right of way of defendant being the only available grass and water in the immediate vicinity. It was customary, as appears from the evidence, to keep the horses tied up when not in use, or, when they were turned loose, a man was detailed to watch and look after them, and keep them from the railroad track. On the twenty-third day of June, 1895, said horses were by an employee of plaintiff turned loose upon the right of way of defendant, for the purpose of grazing and watering; and one Anderson, an employee of plaintiff, was deputed to watch and look after them, and keep them from the railroad track. While

so engaged he was called to dinner or supper, at the cabin or shack; and, as he states, believing that no train was due at that point at that time, he left the horses, and repaired to the cabin for his meal, and, while he was thus absent, the horses strayed upon the railroad track, and were struck by a passing freight train.

There are twenty-nine errors assigned by appellant in its brief. We shall only consider such of them as we deem essential to the decision of the case.

The first error assigned is irregularity of the jury, in that they reached their verdict by a resort to the determination of chance. While the facts disclosed by the record do not bring this case strictly within the letter of the decision in the case of *Flood v. McClure,* 3 Idaho, 587, 32 Pac. 254, we think it is clearly within the spirit of that decision. Courts should at all times discountenance and disapprove the resorting to any such insidious means of reaching a verdict. It is demoralizing in its tendencies, and is calculated to bring the administration of justice into disrepute.

The second assignment of error is covered by the first.

As to the third and fourth assignments of error, which are in reference to the ruling of the court upon the admission of testimony, we think they are not well taken. These questions were in reference to the value of the horses, and, we think, were proper.

As to the fifth assignment of error, as the question appears in appellant's brief, we see no error; but an examination of the record discloses the answer to the question, which, we think, was improper to be admitted as evidence, in that it is entirely the statement of what other parties told the witness in regard to the running of trains upon the railroad, but we think this should have been reached by a motion to strike out the answer.

The sixth assignment is to the overruling by the court of appellant's objection to a question propounded to a witness on behalf of plaintiff, which called for a statement made by parties, strangers to the record. This ruling, we think, was erroneous.

We see no error in the seventh assignment, nor in the eighth and ninth assignments.

We have carefully examined the instructions the giving and refusal of which are alleged to be erroneous; and while we think the district court fell into the altogether too prevalent error with trial courts, of giving any instruction which correctly states a principle of law, without regard to whether it is warranted by the evidence or not, still we believe, as a whole, the instructions given correctly stated the law of the case. The vice of the whole business is found in the fact, palpably apparent from the record, that the jury, in arriving at their verdict, gave but little heed either to the instructions of the court or to the evidence. On the contrary, they seem to have been governed and controlled by a sentiment too frequently evidenced by the verdicts of trial juries in this country, to wit, that corporations, specially railroad corporations, have no rights which juries are bound to respect. Think as we may of the policy of the law which invests corporations with vast and multitudinous rights, powers, and privileges, so long as they exist by virtue of law they are entitled to the protection of the law; and their rights under the law are not to be measured by the sentiment or prejudice which may, for the time being, be dominant in the community. While all corporations are, and, of right, should be, held to a strict accountability in the exercise and enjoyment of their corporate rights under the law, their right to full protection therein from the law must not be overlooked or abrogated.

The record in this case shows as palpable a case of contributory negligence on the part of the plaintiff as can be readily imagined. The plaintiff, without leave from defendant, went upon its right of way, erected her cabin there, and engaged in the occupation of cutting and hauling ties and other timber from the adjoining lands. She was a trespasser. That she recognized the risks and perils incident to her unauthorized and illegal act is shown by the fact that when the horses were not tied up, but were allowed to go loose, for the purpose of grazing and water, which could only be had on defendant's right of way, a man was always set to watch them, and keep them from straying upon the railroad track; and it was to the neglect and carelessness of this man, and not to any want of ordinary

care on the part of the defendant, that the accident is attributable.

We have examined the cases cited by respondent. They are not in point. This is not a case where the animals were rightfully upon the public domain, and casually strayed upon the railroad track. The doctrine that cattle are free commoners cuts no figure in this case. The plaintiff voluntarily took the animals upon the right of way of defendant, and knowingly submitted them to all the chances and perils incident to her act. We think the evidence clearly shows the exercise of all the care that the circumstances required or made obligatory upon defendant. This class of cases is extremely numerous, and, while the decisions therein are somewhat variant, we have been able to find none which would support us in affirming the judgment in this case, as shown by the record. "A man who willingly abandons his property to destruction, or purposely exposes it to known danger, has no right, either in law or morals, to invoke the assistance of courts of justice to secure pay for it." (*Welty v. Railroad Co.*, 105 Ind. 55, 4 N. E. 410, cited in *Railroad Co. v. Woodward*, 112 Ind. 118, 13 N. E. 260.) In the last case cited, the court say: "To habitually turn animals loose upon a railroad track, or right of way is, however, something more than contributory negligence. Such conduct evinces a disposition to abandon the animals to the hazard of certain and inevitable destruction. sooner or later."

The right of way of defendant ran through dense timber. The only clearing was along the railroad track, to the limits of the right of way, about two hundred feet in width. The plaintiff took her horses upon the right of way, and there left them. It was not a case of straying from the public domain or the premises of plaintiff. It was courting the destruction of the animals. We think the district court would have been justified in granting the motion of defendant for a nonsuit. The judgment of the district court is reversed, with costs.

Morgan, C. J., and Sullivan, J., concur.