R. J. KINGSBURY V. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant, and C. W. KINGSBURY V. THE SAME DEFENDANT, Appellant.

**Pleading.** In an action to recover damages for the killing of a horse which entered on the right of way at a point where the company had a right to fence, a general denial presents the issue whether the railroad had a right to fence at the point in question, and not whether it had legal excuse for failing to do so. The last is matter in estoppel which must be specially pleaded.

SAME. If the fact that a duty required by law involves difficulty or expense would be a legal excuse for failure to meet the requirement, it must be pleaded as a matter of affirmative defense, to be available.

SAME: *Instructions.* In an action against a railroad company for the killing of live stock, resulting from the failure of said road to build a fence along a portion of its right of way, acts of plaintiff excusing such neglect are not available under a general denial, and under such issues, an instruction allowing a recovery if a horse was killed through neglect of defendant to fence, is proper.

**Fences.** A fence built along his holding by a tenant of lands leased from a railway company is not a right of way fence, in the absence of some agreement, express or implied.

**Evidence: RAILROADS.** A finding that horses killed on a railroad right of way entered at a point where there was no fence, will be supported by evidence that the hoofprints of the animals indicated such to be the fact.

*Appeal from Appanoose District Court.*—HON. T. M. FEE, Judge.

FRIDAY, DECEMBER 17, 1897.

THE two cases are so nearly identical in facts that they were tried together below, and are so submitted in this court. Our consideration will have especial reference to the first-entitled case. The defendant's line of road crosses plaintiff's land. On plaintiff's land, and adjacent to defendant's right of way, is a coal mine,

which in 1888 was leased to the Enterprise Coal Company for a term of fifty years. For the use of the coal company in shipping its coal, the defendant company run a spur track from its main line to and past the mine. The area occupied by the coal company was from one and one-half to two acres, on which were its shaft, machinery, dumping ground, and other conveniences for the operation of the mine, and across this the spur track was built and operated. Before the construction of the spur track, the right of way fence had extended along the main line of defendant's road. The mine is on the north side of the main line, and around the area we have mentioned is a fence, built by plaintiff, which connects on the east of the coal mine, and also on the west of it, with the right of way fence along the main line. Between these points of connection there is no right of way fence, as the one once there had been taken away or broken down, and the track is open to the space around which is the fence of plaintiff's above described. We should state here that we may be mistaken as to some of the facts, for the testimony designates lines and locations by letters, figures, and a dotted line on a plat, and all of the figures, most of the letters, and the dotted line are omitted from the plat, so that some of the evidence is absolutely unintelligible. As we understand, plaintiff's horse and one belonging to his son (who is plaintiff in the other suit) passed through a gate in the fence made by plaintiff, that we have described, and then across the coal land, onto the right of way, and were killed by a passing train. These actions are to recover, under the statute, for double their value. There were verdict and judgment in each case for the plaintiff, and the defendant appealed.—*Affirmed.*

*Mabry & Payne* for appellant.

*C. F. Howell* for appellees.

GRANGER, J.—I.   The petition alleged a failure to fence the right of way at a point where defendant had a right to fence, and also negligence in the operation of defendant's train, as the cause of the injury.  The answer is a denial.   The court gave the case to the jury only on the question of the neglect to fence the right of way.  We do not understand appellant to claim but that defendant had the right to fence its right of way at the point where the horses came onto it,—that is, between the points east and west of the coal land; but its claim is that, because of the mutual interests of the parties, the defendant was excused from keeping a fence on that part of its right of way.  It is not claimed that plaintiff ever made any agreement to that effect.  If he has no right now to insist that the company should maintain a fence at the place in controversy, or be liable for a neglect to do so, it must be because of his acts in leasing the land for mining purposes, and fencing around it as he did.  The legal effects of the acts, if sufficient as a defense, would be an estoppel, which is not pleaded, and it must be before advantage could be taken of it.   *Glenn v. Jeffrey*, 75 Iowa, 20. The rule is familiar.  The issues under a general denial, presented simply the question, had the company the *right* to fence its right of way at the point in question? not, has it a legal excuse for not so doing?  The latter, if it should be that, because of the acts of plaintiff, or the relationship of the parties arising from plaintiff's acts, or the mutual interests of the parties growing out of the coal-mining interests, it was not bound to fence, would be an affirmative defense, to be pleaded as such, and does not arise on a denial, as in this case.  We take it that the court below took this view of the issues, for it denied the admission of evidence on the theory of an affirmative defense, and submitted the case on the theory alone of the defendant's liability if it had

neglected to build or maintain a fence along its right of way at the point in question, and the horses went onto the right of way, and were killed in consequence of it. It told the jury that if there had been such neglect, and the horses were so killed, there should be a recovery. We think the rule thus stated is the correct one under the issues. Thus understood, the facts to warrant a recovery were without dispute so far as the acts of the defendant were involved concerning the fence. It was simply a question if the horses were killed in consequence of the failure to maintain the fence, and the amount of damage. It is said in argument that the company could not keep a fence along the right of way at this place without making a cattle guard on the spur track. That, of course, would involve expense, but it would not change the right of defendant to maintain the fence. The case turns on the right to maintain the fence and the failure to do so. If difficulties or costs in so doing would be an excuse in law, it would, as before stated, be a matter of affirmative defense to be pleaded. Some assignments are argued on the ruling as to the admission of evidence. Such rulings were in line with the court's theory that the claim of mutual interests or understandings, as a defense, was not involved, which we hold to be correct. The court said to the jury that the fence built by plaintiff around the leased land was not a right of way fence, and the court was clearly right. The undisputed facts show it to be a fence built by plaintiff from the right of way line, on the east of the coal land to the same line on the west, inclosing a piece of plaintiff's land that he had leased. It could only be treated as a right of way fence by virtue of some agreement, expressed or implied, to that effect; and, as we have said, no such issue is presented. The court, however, offered defendant the right to show that the fence

built by the plaintiff was, by arrangement, to be taken and adopted in lieu of a right of way fence; but the offer was disregarded. *Bond v. Railroad Co.*, 100 Ind. 301, and some other cases are cited. None of them are against our conclusion here. This case turns on a question of pleadings. Those deal with issues presented.

II.   A question is made as to the sufficiency of the evidence to show that the horses went onto the right of way where there was no fence. In this respect we experience a difficulty because of what we have said as to the defective plat to which the testimony refers, and, without the reference letter, figure, or mark, the evidence is in some respects obscure. A witness refers to a dotted line on the plat as indicating the point at which it is thought the horses went onto the right of way. There is no such dotted line on the plat before us. The only dotted line is that indicating the railway track. It does, however, appear that there were indications that the horses went from the coal land onto the right of way, because of tracks to show that fact. Some cases cited, holding the evidence insufficient to show that stock went onto the track at the point where no fence was kept, are not like this in their facts, and do not control it. We think the evidence in this respect is such that the question was one for the jury. The judgment in each case will stand AFFIRMED.