[No. 27855. Department Two. March 9, 1940.]

W. A. JONES *et al., Appellants,* v. NORTHERN PACIFIC RAILWAY COMPANY, *Respondent.*[1]

[1]Reported in 100 P. (2d) 20.

D. V. *Morthland* and *Lane Morthland,* for appellants.

*Robert S. Macfarlane, Earl F. Requa,* and *Rigg, Brown & Halverson,* for respondent.

BEALS, J.—East of the city of Toppenish, in Yakima county, the main track of the Northern Pacific Railway Company lies, for many miles, in a straight line toward the southeast. For a few miles east of Toppenish, the railroad is paralleled on the north by a graveled highway. Approximately four miles from Toppenish, this highway crosses the railroad right of way, and continues to parallel the track on the south. At the point where the highway crosses the right of way, and extending westerly along the south side thereof, is an extensive field or pasture, upon which is situated the home of the owner. The property is connected with the highway on the north side of the track by a private crossing. The pasture is enclosed by barb-wire fence, the north fence, along the railroad right of way, being maintained by the railway company, and in this fence there is a wire gate at the private crossing, leading to the home of the owner of the land.

During the month of November, 1938, plaintiff W. A. Jones employed three men to drive his herd of seven-

teen cows from a point in Benton county to Wapato, in Yakima county. The journey having commenced, it transpired that the cows were being driven late one afternoon westerly along the highway toward Toppenish. When the cattle reached the point above described, where the highway crosses the track, it had grown dusk. Motor vehicles were using their lights, and it became necessary to get the cows off the road for the night. The men in charge of the herd accordingly turned the cattle into the pasture above referred to, through a gate which opened near the highway crossing. The herders, after a cursory examination of the pasture, and noticing some horses therein, assumed that the pasture was fully enclosed, made camp and retired for the night. They made no attempt to contact the owner of the land, nor did they make any careful examination to ascertain whether or not the land was completely enclosed.

Shortly after midnight, a Northern Pacific passenger train, bound east, awakened one of the herders. He, failing to hear the sound of the cowbells, aroused his companions and instituted a search for the cattle, with the result that they discovered that twelve of the cows had been killed by the train, and another so badly injured that it died. When day broke, it was discovered that the cattle had entered the railroad right of way either through or near the gate above referred to, the gate having been open at the time, and the fence on either side being broken.

W. A. Jones and Yakima Dairymen's Association, as plaintiffs, thereafter sued the Northern Pacific Railway Company for damages, claiming that the defendant's agents had been negligent in operating the train; in failing to keep an adequate lookout; in failing to stop or slow the train when, in the exercise of due care, it might have been stopped in time to avoid the

accident; and finally, in failing to sound any warning of the train's approach. Plaintiffs further contended that the defendant had been negligent in the maintenance of its right of way fence and the private gate therein, above referred to.

Defendant answered, denying negligence, and pleading contributory negligence, as follows:

"That if any cattle or livestock belonging to the plaintiffs, or either of them, were injured in the operation of the train by the defendant at the time and place alleged in said complaint, such injury was caused by the negligence of the plaintiffs in permitting said cattle to trespass upon the right of way of the defendant."

The action was tried to the court sitting without a jury, and resulted in findings of fact and conclusions of law in defendant's favor, followed by a judgment dismissing the action, from which plaintiffs have appealed.

Appellants assign error upon the making of several findings of fact; upon the entry of conclusions of law in respondent's favor; and upon the entry of judgment dismissing the action.

The engineer and fireman in charge of respondent's locomotive testified that it was equipped with a regulation headlight, which rendered objects visible at night for from eight hundred to one thousand feet; that, as the engine approached the private crossing, they saw two moving objects, which they almost instantly recognized as cows, on the track, eight hundred to one thousand feet ahead; that the train was then traveling at approximately sixty miles per hour; that the brakes were applied, locking the wheels, but that notwithstanding this, the engine struck the cows, as above stated. The engineer and fireman testified that no whistle was sounded or bell rung.

The trial court found that appellants' agents in

charge of the cows were guilty of contributory negligence, first, by trespassing upon the pasture, and second, by failing to ascertain whether or not the pasture was enclosed, it appearing that such investigation would have disclosed the open gate leading to the railroad right of way. The trial court also found that the engineer and fireman did everything in their power to avoid the accident, after observing the cows on the track. The court further found that the gate opening on to the right of way from the private crossing was a private gate; that respondent had no notice that the gate was open; and that no duty rested upon respondent to maintain gates at private crossings.

Appellants contend that the trial court erred in finding that their employees were guilty of contributory negligence in turning the cattle into the field without ascertaining whether or not the field was fenced so that the cattle could not wander upon the railroad track. The herders were fully advised concerning the position of the track, which was, of itself notice of danger.

On cross-examination of one of the herders, called as a witness by appellants, respondent's counsel asked the witness what investigation he had made concerning the right of way fence and the enclosure of the pasture generally. Appellants' counsel objected several times upon the ground that the testimony was immaterial, the objections having been overruled. Appellants' counsel at no time urged that, under the allegation of negligence contained in the defense in respondent's answer, the testimony sought to be elicited was inadmissible. Appellants now argue that respondent pleaded affirmatively only one specific ground of contributory negligence, that of allowing the cattle to trespass, and that the objections to the questions above referred to should have been sustained as with-

out the issues raised by the pleadings. The questions asked on cross-examination were material to the controversy, and probably within the issues as raised. In any event, no objection having been urged upon the ground that the cross-examination was without the issues, thereby affording the trial court an opportunity to pass upon that specific question, an objection upon that ground cannot for the first time be urged on appeal.

Appellants contend that the trial court erred in finding that the engine crew took all possible steps to avoid the accident. The train was traveling at about sixty miles per hour, which, under the circumstances, was not an unreasonable speed. Two cows were seen on the track, from eight hundred to one thousand feet ahead, probably at the shorter distance. The brakes were promptly applied, and every wheel on the train locked. By the time the engine struck the cows, the train had slowed to forty miles per hour.

Appellants argue that the train crew were negligent in failing to blow the whistle or sound the bell. The engineer and fireman testified that, as soon as they saw the cows, their efforts were concentrated upon an attempt to stop the train, and that there was not sufficient time to sound an alarm. Manifestly, the time was measured only in a few seconds, and in view of all the circumstances, it cannot be held that the trial court erred in finding the engine crew free from negligence. The approaching train, with locked wheels, must have made considerable noise. It is difficult to imagine that a blast of a whistle or the ringing of a bell would have caused the cows to move from the track.

The trial court, in its memorandum opinion, observed that the overwhelming weight of the evidence is to the effect that the cattle passed through the gate and

onto the right of way, and not through any broken portion of the fence.

■ The evidence introduced by appellants concerning the examination of the pasture made by the herders at the time the cows were turned into the pasture, is extremely vague and unsatisfactory. It is admitted that the herders turned the cows into the field without any attempt to obtain permission to do so. Appellants' employee who was in charge of the moving of the cattle testified that he made some investigation concerning the fences. From his testimony, it appears beyond question that this investigation was most casual, and nowise sufficient to justify turning the cattle loose in the pasture next to a railroad right of way. The gate leading onto the right of way was open, and that condition would have been seen had a proper examination of the fence been made. The witness above referred to and another of the herders testified that there was another fence on the pasture, enclosing the portion thereof into which the cows were turned, but from uncontradicted testimony it was shown that, on the date in question, there was no such fence there. As stated by the trial court:

"The plaintiffs were trespassing upon this close, and the court finds that they did not make the inspection which a reasonably prudent man should have done for the protection of his stock. Plaintiff's employees testified that they saw a fence, which in truth and in fact did not exist at all, and the evidence shows that if they had made a reasonable inspection of the premises in question, they would undoubtedly have discovered this open gate. Reasonably prudent herders of stock should have done this."

One of the herders, in response to a question as to what happened when the cows were turned into the field, answered:

"Well, drove them up; it was getting late; was trying to make Toppenish but it was getting so late that we had to stop some place, and come to this field there and it was a nice field so we just turned them in."

Appellants' employees made no attempt to ascertain whether or not the house on the field was occupied, and if so, to ask permission to pasture the cattle, and to find out whether or not the field was securely fenced. The conduct of appellants' agents was grossly negligent.

We are not impressed with appellants' argument that the railroad company might owe a higher duty to a trespasser upon the pasture than to the owner thereof.

In the case of *Dickey v. Northern Pac. R. Co.*, 19 Wash. 350, 53 Pac. 347, the plaintiff sued the railroad for damages suffered by the killing of some horses belonging to plaintiff. From a judgment entered on the verdict of the jury in plaintiff's favor, the defendant appealed. It appeared that the plaintiff, after obtaining permission from the owner, camped upon a field adjoining a railroad right of way, turning his horses loose. Two sides of the field were fenced, but there was no fence along the right of way. Plaintiff testified that he knew that the horses would be in danger from passing trains, but that, having been informed there would be no more trains that night, he went to bed. The judgment of the trial court was reversed, with directions to dismiss the action. In the course of the opinion, the court said:

"We also think that the testimony of the plaintiff fully established the fact that he was guilty of such negligence as directly contributed to the injury of which he complained. Here was a small field, fenced in on all sides excepting that adjoining the railway track. On the opposite side of the track there was also a fence. To turn a band of horses loose in such a place without taking any steps to prevent their going

upon the track and in the way of passing trains must be held in law such negligence as will prevent a recovery. Under such circumstances, it was only to be expected that the horses would stray upon the track and in the way of passing trains.

" 'A man who willingly abandons his property to destruction, or purposely exposes it to known danger, has no right, either in law or morals, to invoke the assistance of the courts of justice to secure pay for it.' *Welty v. Indianapolis & V. R. R. Co.*, 105 Ind. 55 (4 N. E. 410)."

The authorities upon which appellants rely upon this phase of the case are not controlling.

The trial court correctly held that, because of the gross negligence of the herders in charge of the cattle, appellants are not entitled to recover against respondent.

Our opinion upon this phase of the case renders unnecessary discussion of other questions argued by counsel for the respective parties.

Judgment affirmed.

BLAKE, C. J., STEINERT, GERAGHTY, and JEFFERS, JJ., concur.